UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONYA M. BAUMANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:08-cv-1385 LJM-JMS |
| | ) |
| THE FINISH LINE, | ) |
| | ) |
| Defendant. | ) |

**FINISH LINE'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS AND COMPEL ARBITRATION**

Defendant, The Finish Line, Inc. ("Finish Line"), submits the following Reply in support of its Motion to Dismiss and Compel Arbitration.

**I. Introduction**

Plaintiff offers up several excuses in an attempt to avoid her contractual obligation to arbitrate disputes with Finish Line. None of them, however, have any merit. As set forth in more detail below, Plaintiff and Finish Line have a valid and binding contractual agreement to arbitrate disputes, their agreement is enforceable, and Plaintiff's claims are covered by the agreement. Nevertheless, even if the Court accepts Plaintiff's arguments and determines that some provisions of the arbitration agreement are invalid -- which Finish Line denies -- the Court should sever the relevant provisions and order arbitration to proceed. Accordingly, Finish Line respectfully requests the Court dismiss the Complaint and grant its Motion to Compel Arbitration.

## II.  Discussion

**A.      Plaintiff Is Contractually Bound To Arbitrate The Claims Asserted In This Lawsuit.**

Plaintiff does not dispute that she signed an agreement to arbitrate with Finish Line covering the claims asserted in her Complaint, that the agreement she signed encompasses her pending discrimination and retaliation claims; that signing the agreement was a condition of her employment, or that she subsequently was employed by Finish Line.  Instead, Plaintiff claims that she is not bound by the contractual agreement she signed simply because the copy of The Finish Line, Inc. Employee Dispute Resolution Plan (the "Plan") attached as an Exhibit to Finish Line's Motion to Dismiss Complaint and Compel Arbitration happens to have a blank line next to the entry for the "effective date."  Essentially, Plaintiff maintains that she can ignore the contract she signed with Finish Line because the Plan was not adopted by Finish Line.  This argument is spurious, and in fact, is refuted by the Declaration of Cindy Cook ("Cook"), which was filed with the Plan.  [Dkt. 6, Tab A, ¶4].  Cook's Declaration establishes that the Plan was adopted by Finish Line on September 30, 2001,[1] and that the Plan was made available for Plaintiff's review at the time she applied at Finish Line, and Finish Line offered Plaintiff employment in exchange for her acceptance of the agreement.[2]  [*Id.,* ¶¶4-7].

---

[1] Attached as Exhibit 1 is another copy of the same Plan, which was also filed previously in *Brownie v. The Finish Line*, Cause No. 1:04:CV:1605 DFH-VSS at Dkt. 12 (S.D. Ind. 11/24/2004), bearing the effective date of September 30, 2001 – the exact same date described by Cook in her declaration.

[2] Plaintiff cites to *DeGroff v. MascoTech Forming Technologies-Fort Wayne Inc.*, 179 F.Supp.2d 896 (N.D. Ind. 2001), for her "effective date" argument.  However, her citation to this case is mystifying.  *DeGroff* enforced an arbitration agreement much like the one at issue here.  Moreover, *DeGroff* did not address any of the issues raised by Plaintiff, and specifically, it did not address the effective date of an arbitration plan or the enforceability of a plan that is accepted by the employee in an agreement to arbitrate but which had not been technically adopted by the employer.  As seen above, Finish Line did, in fact, adopt the Plan at issue on September 30, 2001, and in any event, Plaintiff agreed to be bound in her agreement to the Plan irrespective of whether or not the company technically adopted it.

Moreover, regardless of whether or not the Plan has an effective date, there can be no credible dispute that Plaintiff expressly agreed to arbitrate the claims at issue in this matter. Specifically, Plaintiff expressly agreed to the following:

**Applicant Statement**

*<u>I agree that I will settle any and all previously unasserted claims, disputes or controversies</u>* arising out of or relating to my application or candidacy for employment and/or cessation of employment with The Finish Line, Inc., *<u>exclusively by final and binding arbitration before a neutral arbitrator</u>*.  By way of example only, such claims include claims under federal, state, and local statutory or common law, such as . . . Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991 . . .Complete details of my agreement to submit these claims to arbitration are contained in The Finish Line, Inc. Employee Dispute Resolution Plan, which has been made available for my review prior to the execution of this application.[3]

*<u>I have read and understand the above paragraph and have voluntarily agreed to it.</u>*

[Dkt 6, Tab A, ¶ 5, Ex. 2 (emphasis added)].

Plaintiff signed her name below this statement.  Having affixed her signature and commenced employment with Finish Line as a result of her agreement to arbitrate, Plaintiff is contractually bound to arbitrate this dispute.

**B.**     **The Agreement Is Supported By Consideration.**

Plaintiff claims that the agreement is unsupported by consideration, alleging that she is required to give up greater litigation rights than Finish Line.  As an initial matter, this misconstrues the clear and unambiguous language of the Plan.  The Plan encompasses both parties equally and "applies to any past, present, or future legal or equitable claim, demand, or controversy, whether or not arising out of the employment relationship, between persons bound by the Plan [Plaintiff and Finish Line]."  [*Id.,* Ex. 1, ¶4(B)].

---

[3] Nothing in the agreement is conditioned upon the Plan having an effective date.  Consequently, aside from the uncontroverted fact that the Plan was, in fact, adopted on September 30, 2001, the issue of whether or not the Plan had an effective date is immaterial with respect to Plaintiff's agreement to arbitrate employment related disputes.

3

Plaintiff's sole authority for her argument that the agreement lacks consideration is *Davis v. O'Melveny & Meyers*, 485 F.3d 1066 (9th Cir. 2007). However, her reliance on this case is misplaced. First of all, *Davis* interpreted California law, not Indiana law. *Davis*, 485 F.3d at 1084. Second, the case did not even involve consideration. Third, the court questioned the arbitration agreement at issue in that case because the terms of the agreement were overbroad and gave the company the ability to escape the agreement to arbitrate. *Id.,* 485 F.3d at 1078-79. Unlike the agreement in *Davis*, the Plan in this matter requires both parties to arbitrate disputes equally, with only limited exceptions in certain specific matters that are not applicable here.[4]

Indeed, Finish Line has provided more than adequate consideration by agreeing to be bound by the arbitrator's decision as well as by offering Plaintiff employment. *See Kreimer v. Delta Faucet Co.,* 2000 WL 962817, at *7-*8 (S.D. Ind., June 2, 2000) (finding that under Indiana law both an agreement to continue at-will employment and the employer's agreement to be bound by the arbitrator's decision are adequate consideration); *Flynn v. Aerchem, Inc.*, 102 F.Supp. 2d 1055, 1060-1061 (S.D. Ind., July 3, 2000)(same); *DeGroff*, 179 F.Supp.2d at 905-906 (same). Therefore, Plaintiff has no credible argument refuting that an enforceable arbitration agreement exists and that her claims are coved by the agreement. As a result, the Court should enforce the clear and unambiguous language of the parties' valid and binding agreement to arbitrate. *See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (enforcing agreement to arbitrate disputes); *Abbott v. Lexford Apartment Services, Inc.*, 2002 U.S. Dist. LEXIS 14746, at *13-14 (S.D. Ind., August 2, 2002)(same); *Kreimer,* 2000 WL 962817, at *6 (same).

---

[4] For instance, the Plan does not apply to ERISA claims; claims ancillary to criminal proceedings; an employee's claims for workers' compensation benefits or unemployment compensation benefits; or the company's claims for injunctive or other equitable relief for unfair competition or the use or unauthorized disclosure of trade secrets or confidential information. [Dkt. 6, Tab A, Ex. 1, ¶¶5(b)-(c)].

**C.     Finish Line Has Not Waived Its Right To Demand Arbitration.**

Plaintiff next attempts to escape her contractual agreement to arbitrate by making the circular argument that Finish Line somehow waived its right to arbitrate by moving the Court to enforce arbitration after Plaintiff filed this lawsuit.  Basically, Plaintiff maintains that Finish Line should have anticipated that she would want to continue this matter after the EEOC completed its review of her Charge by initiating arbitration proceedings of its own accord.  This makes no sense.  It is Plaintiff – not Finish Line – who is seeking redress in this matter.  Nothing prevented Plaintiff from initiating arbitration as set forth in the parties' agreement.

There is no dispute that Finish Line timely moved to compel arbitration after Plaintiff filed her Complaint.  Finish Line has not in any way violated the agreement or acted inconsistently with the right to arbitrate.  *See DeGroff*, 179 F. Supp. 2d at 912 (requiring court to find that party has acted inconsistently with the right to arbitrate in order to establish waiver).  Accordingly, Plaintiff's waiver argument is meritless.

**D.     The Plan's Limitations Provision Is Not Unconscionable.**

Although somewhat difficult to decipher, Plaintiff's next excuse for avoiding arbitration seems to be that the agreement she signed unconscionably shortens the applicable time-period for bringing discrimination claims.  Plaintiff's theory rests on Paragraph 6 of the Plan, which states: "[a] party must initiate any Arbitration proceeding under this Plan within the lesser of the applicable time period established by the governing statute of limitations or one year." [Dkt. 6, Tab A, Ex. 1, ¶6].  Plaintiff, however, conveniently ignores the very next sentence which states: "[i]f this results in the shortening of a statute of limitations that expressly is forbidden by an

unequivocal rule of law, then the legally required statute of limitations will apply." [*Id.*]. Thus, the clear and unambiguous language of the Plan simply does not support Plaintiff's theory.[5]

Further, even if the arbitration agreement shortened the applicable limitations period, Plaintiff's argument still would fail as a matter of law. The Seventh Circuit has held that an arbitration agreement may shorten the limitations period in a discrimination and retaliation case such as this one. *See Taylor v. Western & Southern Life Ins. Co.,* 966 F.2d 1188, 1204 (7th Cir. 1992) (finding that in the absence of a controlling statute to the contrary, a provision in a contract may validly limit the time for bringing claims such as those under Title VII to a period less than that prescribed in the general statute of limitations, provided that the shorter period is reasonable). *See also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir. 1999)(holding that Congress did not intend Title VII to preclude enforcement of pre-dispute arbitration agreements in finding a clear Congressional intent to encourage arbitration of Title VII claims).

### E.   Plaintiff's Claim that Arbitration Would Deprive Her of Rights Provided By Title VII Misinterprets the Clear and Unambiguous Language of the Agreement.

Plaintiff's next argument is that the Plan impermissibly requires her to bear her own attorneys' fees.[6] As with the limitations period above, Plaintiff's theory misconstrues the clear and unambiguous language of the agreement. The agreement actually states: "[e]ach party shall bear its own costs and attorneys' fees; provided, however, that the Arbitrator may award attorneys fees and costs to the prevailing party in accordance with the terms of the Plan." [Dkt. 6, Tab A, Ex. 1, ¶13]. The fees provision in the Plan, therefore, is no better or worse than what

---

[5] Plaintiff's argument also elevates form over substance. Based on the allegations of the Complaint, the events at issue occurred in 2008 – which would be well within the limitations period set forth in the arbitration agreement and the statutes identified in the Complaint.

[6] Evidently, Plaintiff does not want to pay her own lawyer.

Plaintiff would obtain under federal or state law.  *See Feltner v. Bluegreen Corp.*, 2002 U.S. Dist. LEXIS 20449, *20, *30 (S.D. Ind., October 8, 2002) (McKinney, L.) (upholding validity of arbitration agreement in discrimination case which provided that the arbitrator had discretion to award attorneys' fees to the prevailing party).

Plaintiff's last excuse for avoiding her contractual obligations is that the Plan imposes too great a cost-splitting burden on her.  The law is settled that where a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.  *See Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 92 (2000) (refusing to invalidate arbitration agreement and noting that plaintiff's reliance upon AAA cost estimates was "too speculative" to support the plaintiff's contention that the costs of arbitration were prohibitively expensive).  In this case, Plaintiff fails to provide any information whatsoever regarding the anticipated costs of arbitration and instead, simply declares that whatever they are, they will be too much for her to bear.  As set forth in *Green Tree*, this type of unsupported assertion is meritless.  *See also Curry v. MidAmerica Care Found.*, 2002 U.S. Dist. LEXIS 14737, *18 (S.D. Ind., June 4, 2002) (enforcing an arbitration agreement that called for the parties to share equally all fees and expenses of arbitration and finding Plaintiff made no showing of costs and expenses she would likely incur or that her financial resources would render such costs prohibitive).

Plaintiff's reliance on the out-of-jurisdiction cases *Shankle v. B-G Maintenance Mgmt. of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999) and *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465 (D.C. Cir. 1997), is misplaced.  Both of these cases were decided before the Supreme Court's ruling in *Green Tree* requiring Plaintiff to prove how arbitration would be prohibitively expensive.  Additionally, the arbitration agreements at issue in *Shankle* and *Cole* were different

7

than the one at issue here. The agreements in those cases required the parties to share equally in the costs of arbitration. By contrast, the Plan in this case caps an employee's maximum responsibility to either $10,000 or 10% of the amount in controversy and expressly provides that: "the Arbitrator has the authority upon motion to further reduce the Employee's share of the costs and fees upon a showing of substantial need." [Dkt. 6, Tab A, Ex. 1, ¶13].

Thus, allocation of costs essentially is advisory, with the arbitrator having the real authority to determine the extent of an employee's share of costs and fees, *if any*. Moreover, the Plan does not grant the arbitrator discretion to order the losing party to pay all arbitration costs, unless the employee has filed a claim that is frivolous or brought for purposes of harassment (which is consistent with the substantive law applied by the federal courts). [*Id.,* ¶12]. Accordingly, the cost-splitting provision at issue is no more burdensome to Plaintiff than the costs she already subjected herself to incurring when she filed the Complaint in federal court. *See* Fed. R. Civ P. 54 (except when express provision therefore is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party).

Furthermore, the burden actually may be less on Plaintiff under the terms of the Plan than in federal court because the arbiter can reduce her costs if she satisfies the requisite showing of substantial need. Therefore, Plaintiff cannot credibly argue that the cost-splitting provision will have a chilling effect on litigants seeking to arbitrate their employment disputes. *See Feltner* 2002 U.S. Dist. LEXIS 20449 at *30 (upholding an arbitration agreement where Plaintiff failed to show the arbitration agreement constituted a barrier precluding her from effectively vindicating her statutory rights in arbitration).

Accordingly, Plaintiff's bald assertion that "[t]he totality of the alleged agreement and the

actions of the employer are unconscionable" is inherently absurd.  In fact, the arbitration agreement at issue and the Plan have been enforced by several federal courts.  *See, e.g., Dominguez v. The Finish Line Inc.*, Civil No. A-05-CA-322-LY (W.D. Texas, May 31, 2006); *Brooks v. The Finish Line, Inc.*, Cause No. 3:05-0715 (M.D. Tenn. April 26, 2006).  Given the clear policy in favor of enforcing arbitration agreements, this Court, therefore, should enforce the agreement at issue and grant Finish Line's Motion.  *See Michalski*, 177 F.3d at 636 (enforcing agreement to arbitrate disputes); *Abbott*, 2002 U.S. Dist. LEXIS 14746, at *13-14 (same); *Kreimer,* 2000 WL 962817, at *6 (same); *DeGroff*, 179 F.Supp.2d at 902 (same).

**F.     Even If The Court Determines That A Plan Provision Is Invalid, The Court Should Sever That Provision And Enforce The Remainder Of The Plan.**

The United States Supreme Court and the Seventh Circuit Court of Appeals both recognize a liberal policy favoring arbitration of disputes.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Koveleskie*, 167 F.3d at 364.  Thus, to the extent that the Court has any doubts regarding the arbitrability of this matter, those doubts must be resolved in favor of arbitration.  *See, e.g., Kitts v. Menards, Inc.,* 519 F. Supp. 2d 837, 844 (N.D. Ind. 2007) (finding a presumption in favor of arbitration where a Plaintiff's fails to prove that Congress intended otherwise).

Additionally, the Plan specifically provides that its terms are severable, and "the invalidity or unenforceability of any provision . . . shall not affect the application of any other provisions." [Dkt. 6, Tab A, Ex. 1, ¶17].  As a result, should the Court deem some of the Plan's provisions unenforceable, the Court should follow the presumption of arbitration by excising the offending provisions instead of invalidating the entire agreement.  *See Curry,* 2002 U.S. Dist. LEXIS 14737 at *20 (recognizing that severability clause in arbitration agreement contemplates the parties' agreement to modify when a particular provision is deemed unenforceable).

9

### III.  Conclusion

For the reasons set forth above, Finish Line respectfully requests that Plaintiff's claims against Finish Line be dismissed in their entirety and that Plaintiff be compelled to arbitrate all claims against Finish Line in accordance with the terms of the Plan.

<div style="margin-left: 50%;">

Respectfully submitted,

*s/ Hannesson I. Murphy*
Kenneth J. Yerkes
kyerkes@btlaw.com
Hannesson I. Murphy
hmurphy@btlaw.com
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:     317/236-1313
Facsimile:     317/231-7433

Attorneys for Defendant,
The Finish Line

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of December, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Richard L. Darst - rdarst@fed-law.com

*s/ Hannesson I. Murphy*
Hannesson I. Murphy

INDS02 RLSMITH 1019048v1

11