UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| TONYA M. BAUMANN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-1385-LJM-JMS |
| | ) | |
| THE FINISH LINE, INC., | ) | |
| Defendant. | ) | |

## <u>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

This matter comes before the Court on defendant's, The Finish Line, Inc. ("Finish Line"), Motion to Dismiss Complaint and to Compel Arbitration, which the Court converted into a Motion for Summary Judgment on the sole issue of whether the Court must dismiss the Complaint and compel arbitration pursuant to Federal Rule of Civil Procedure 12(d). Dkt. No. 17.  Plaintiff, Tonya M. Baumann ("Baumann"), alleges in her Complaint that Finish Line terminated her employment after she complained about sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").  Finish Line argues that Baumann's claims are barred by a valid and binding arbitration agreement.  As a result, Finish Line urges the Court to dismiss Baumann's Complaint.

The Court has considered the parties' arguments and, without addressing the merits of the Complaint, **GRANTS** Finish Line's Motion for Summary Judgment.

## I. **BACKGROUND**

According to Cindy Cook, Finish Line's Vice President of corporate human resources, Finish Line is a specialty athletic footwear and apparel retailer operating approximately 794 stores in forty-seven states.  Cook Decl. ¶ 3.  Finish Line intially hired Baumann through a temporary staffing agency on November 26, 2007.  *Id.* at ¶ 5.  On or about January 7, 2008, Baumann applied for, and later obtained, a regular employment position as a Customer Service Representative in the corporate call center at Finish Line's corporate headquarters in Indianapolis, Indiana.  *Id.*  Before she was hired, Baumann filled out and signed Finish Line's standard job application.  *Id.*  The application contained a separate "Applicant Statement," which Baumann signed.  Dkt. No. 6-4.  The Applicant Statement, reads, in relevant part:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment and/or cessation of employment with The Finish Line, Inc., exclusively by final and binding arbitration before a neutral arbitrator.  By way of example only, such claims include claims under federal, state, and local statutory or common law, such as . . . Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991 . . . Complete details of my agreement to submit these claims to arbitration are contained in The Finish Line, Inc. Employee Dispute Resolution Plan, which has been made available for my review prior to the execution of this application.  I have read and understand the above paragraph and have voluntarily agreed to it.

*Id.*  The complete Employee Dispute Resolution Plan (the "Plan") was made available for Baumann's review at the time she executed her application for employment.  Cook Decl. ¶ 5.  The following statement appears in bold and italicized print at the top of the front page of the Plan:   "Application for employment, initial employment, or continued employment . . . constitutes consent and agreement by both the Employee and the

2

Company to be bound by this Plan."  Dkt. No. 6-3, 1.  The Plan also contains the following

pertinent language:

> Proceeding under the Plan shall be the exclusive, final and binding method
> by which disputes are resolved.  Except as otherwise provided herein or in
> the [Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA")], the parties shall
> have no right to litigate a dispute in any other forum. . . . [T]his Plan applies
> to any past, present, or future [claims] . . . includ[ing] claims relating to the
> employment of [Baumann] . . . and claims for violation of any federal . . . law,
> statute, regulation, or ordinance . . . .

*Id.* ¶ 3; *Id.* ¶ 5(B).  The Plan had a separate section entitled "Effective Date," which was left

blank at the time Baumann received it.  *Id.* ¶ 20.  The Court adds additional facts as needed

below.

## II.  **STANDARDS**

### A.  **SUMMARY JUDGMENT**

As stated by the Supreme Court, summary judgment is not a disfavored procedural

shortcut, but rather is an integral part of the federal rules as a whole, which are designed

to secure the just, speedy, and inexpensive determination of every action.  *See Celotex

Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers

v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990).  Motions for summary

judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which

provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is entitled to judgment as
> a matter of law.

3

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even

4

when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## B.  FAA

Federal policy strongly favors arbitration.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).  "The Supreme Court has repeatedly counseled that the FAA leaves no room for judicial hostility to arbitration proceedings and that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased."  *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758 (7th Cir. 2001); s*ee also Gilmer*, 500 U.S. at 24 (observing that the purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.").   The FAA provides for stays of district court proceedings when any issue therein is referable to arbitration.  9 U.S.C. § 3.  However, if all of the issues raised in the district court must be submitted to arbitration, then a court may dismiss the case without prejudice.  *See DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.*, 179 F.Supp.2d 896, 914 n.20 (N.D. Ind. 2001) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.3d 1161, 1164 (5th Cir. 1992)) ("[W]here all the issues raised in the district court must be submitted to arbitration, the clear weight of authority supports dismissal of the case.").

### III.  DISCUSSION

The parties dispute whether the Applicant Statement and the Plan (collectively, the "Arbitration Agreements") constitute a valid, enforceable agreement to arbitrate.  Arbitration agreements are treated as ordinary contracts.  *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997).  Accordingly, Indiana law will govern the issue of whether Baumann and Finish Line agreed to arbitrate.  *Id.*  Finish Line requests that the Court enforce the terms of the Arbitration Agreements and dismiss the Complaint.  Baumann raises several arguments in her attempt to have the Court set aside the Arbitration Agreements, and the Court considers each in turn.

First, Baumann argues that she was not contractually bound by the Plan because Finish Line had not adopted the Plan at the time she received her copy.  Essentially, Baumann maintains that she is not bound to arbitrate this dispute because the Plan has a blank line next to the entry for its effective date.  It is undisputed that Baumann signed and dated a separate Applicant Statement in which she agreed to arbitrate any and all disputes with Finish Line, including disputes arising under Title VII. Dkt. No. 6-4.[1]  By signing the Applicant Statement, Baumann acknowledged her receipt of the Plan, which included the "[c]omplete details of [her] agreement to submit . . . claims to arbitration . . . ."  *Id.*  Baumann has not apprised the Court of a single provision in either the Applicant Statement or the Plan that was conditioned upon the Plan having an effective date.  *See Bombard*, 92 F.3d at 562 (7th Cir. 1996) ("It is not [the Court's] function to scour the record in search

---

[1] It is also undisputed that the Plan was, in fact, adopted by Finish Line at the time Baumann received her copy of the Plan.  Cook Decl. ¶¶ 4-7.

of evidence to defeat a motion for summary judgment . . . .").  The Court concludes that the blank line is legally insignificant.

Next, Baumann argues that the Arbitration Agreements were illusory because only Baumann was required to forfeit her right to litigate potential claims against Finish Line. Under Indiana law, an employer's agreement to continue at-will employment, in and of itself, is adequate consideration to support a binding promise from an employee to submit all claims to arbitration.  *Kreimer v. Delta Faucet Co.*, No. IP99-1507-C-TG, 2000 WL 962817, at *7-*8 (S.D. Ind. June 2, 2000) (citing *Ackerman v. Kimball Int'l, Inc.*, 634 N.E.2d 778, 781 (Ind. Ct. App. 1994), *aff'd*, 652 N.E.2d 507 (Ind. 1995)).  Accordingly, Finish Line provided adequate consideration merely by agreeing to continue Baumann's at-will employment.[2]  *Id.*

Next, Baumann argues that Finish Line waived its right to demand arbitration by failing to initiate arbitration proceedings after the Equal Employment Opportunity Commission ("EEOC") completed its review of Baumann's charge.  However, "a delay in instituting arbitration as a result of participation in EEOC proceedings is insufficient to constitute waiver."  *DeGroff*, 179 F.Supp.2d at 913.  Finish Line had no duty to initiate arbitration until Baumann filed her lawsuit.  *Id.*  Finish Line timely asserted its rights under the Arbitration Agreements by filing its Motion to Dismiss Complaint and Compel Arbitration with the Court within one month after Baumann filed her lawsuit.  Dkt. No. 9.  Therefore, Finish Line has not waived its right to demand arbitration.

---

[2] In addition, Finish Line promised to submit any claims it may have against Baumann to arbitration.  *Compare Id.*, *with* Dkt. No. 6-4, *and* Dkt. No. 6-3.

Baumann argues that the Plan unconscionably shortens the applicable time-period for bringing discrimination claims. Her argument takes issue with Paragraph 6 of the Plan (the "limitations provision"), which states: "A party must initiate any Arbitration proceeding under this Plan within the lesser of the applicable time period established by the governing statute of limitations or one year." Dkt. No. 6-3 ¶ 6(A). The Seventh Circuit has held that an arbitration agreement may shorten the limitations period in discrimination and retaliation cases, as long as it is reasonable. *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1205-06 (7th Cir. 1992); *see also Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 414-15 (Ind. Ct. App. 1999) ("It is well-established in Indiana that, while not favored, . . . contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded."). To comply with the limitations provision, Baumann could have either initiated arbitration directly or, in an abundance of caution, filed suit and immediately ask the court for a stay pending the outcome of arbitration. *See Taylor*, 966 F.2d at 1206 (noting that the claimant could have complied with the limitations clause by "fil[ing] suit and ask[ing] the court for a stay pending the outcome of his EEOC charge," and holding that the limitations clause was not contrary to public policy). Baumann has not apprised the Court of any reason why she could not have pursued either option within the lesser of the applicable statutory limitations period or one year. Furthermore, the limitations provision provides an additional safeguard that Baumann apparently wants the Court to disregard. *See* Dkt. No. 6-3 ¶ 6(A) ("If this results in the shortening of a statute of limitations that expressly is forbidden by an unequivocal rule of law, then the legally required statute of limitations will apply."). Taken as a whole, the limitations provision is reasonable.

Next, Baumann argues that the Plan's provisions that require her to share the costs associated with arbitration prevent her from pursuing her Title VII claim. *See* Dkt. No. 6-3, ¶ 13(A) & (C). This Court has previously stated that "the appropriate inquiry is a case-by-case determination of whether the imposition of arbitration costs prevents a party from effectively vindicating his/her statutory rights." *Feltner v. Bluegreen Corp.*, No. IP 02-0873-C-M/S, 2002 WL 31399106, at \*7 (S.D. Ind. Oct. 8, 2002) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-92 (2000)). Baumann has provided the Court with an affidavit that outlines her financial situation and declares she would be unable to afford the costs of arbitration. Dkt. No. 22-2. This bear-bones assertion falls short of Baumann's burden to show the likelihood of incurring costs that would make arbitration prohibitively expensive. *Green Tree*, 531 U.S. at 92. Baumann must provide some evidence that the costs of arbitration would exceed the costs incurred in a judicial setting. *See James v. McDonald's Corp.*, 417 F.3d 672, 679-680 (7th Cir. 2005) (finding that the plaintiff failed to provide evidence of the cost differential between arbitration and litigation, and holding the plaintiff failed to make a sufficient showing that arbitration would be prohibitively expensive); *see also* Fed. R. Civ. P. 56(e) (requiring litigants opposing a motion for summary judgment to submit evidentiary materials which "set forth specific facts showing that there is a genuine issue . . . ."). This she has failed to do.

The Plan sets Baumann's maximum exposure to sharing the filing fee and sharing the arbitrator's fee at "the greater of (i) $10,000[.00] or (ii) 10% of the amount in controversy." Dkt. No. 6-3, ¶ 13(A). This is the maximum amount Baumann could possibly be required to pay under the Plan; the actual amount could be lower. Furthermore, the

Plan gives the arbitrator "authority . . . to further reduce the Employee's share of the costs and fees upon a showing of substantial need." *Id.* Baumann has submitted no evidence indicating how her financial situation would be taken into account under this hardship provision. *See James*, 417 F.3d at 679 (affirming motion to compel arbitration where plaintiff failed to provide any evidence indicating how her financial situation would be factored into the estimated $38,000.00 - $80,000.00 amount for arbitration costs under the applicable fee waiver hardship provision). Therefore, Baumann has not made a sufficient demonstration that the application of Paragraph 13(A) would be prohibitively expensive.

Lastly, Baumann takes issue with a provision in the Plan that requires each party to bear its own attorney's fees, "provided, however, that the Arbitrator may award attorneys' fees . . . to the prevailing party . . . ." Dkt. No. 6-3, ¶ 13(C); *see also* Dkt. No. 6-3 ¶ 12(B). In Title VII cases, attorney's fees may only be awarded to a prevailing defendant if the plaintiff's action was "frivolous, unreasonable or groundless, or [if] the plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see also Monroe v. Children's Home Ass'n*, 128 F.3d 591, 594 (7th Cir. 1997) (same). Paragraph 12(B) complies with this rule by only permitting the arbitrator to award a defendant's attorney's fees if the "dispute or counterclaim . . . is frivolous or brought for the purpose of harassment." Dkt. No. 6-3 ¶ 12(B). In addition, the Plan does not require Baumann to forfeit her right to recover attorney's fees under Title VII. *Compare* Dkt. No. 6-3, ¶ 13(C) ("the Arbitrator may award attorneys fees and costs to the prevailing party . . . ."), *with McCaskill v. SCI Mgmt. Corp.*, 285 F.3d 623, 625 (7th Cir. 2002) (holding an arbitration agreement unenforceable where each party was required to pay its own costs

and attorney's fees, "regardless of the outcome of the arbitration."), *vacated on reh'g by* 298 F.3d 677 (7th Cir. 2002); *see also Feltner*, 2002 WL 31399106, at *11 (noting the *McCaskill* court did not affirmatively decide whether Title VII's fee-shifting provisions override an arbitration agreement).   Accordingly, the Court concludes that the Plan's attorney's fees provisions do not render the Arbitration Agreements unenforceable.

Finally, the Plan specifically provides that if any of its terms are deemed unenforceable, the remaining terms will be severed and will remain valid.  Dkt. No. 6-3, ¶ 17.   Thus, the Plan "contemplates modification where a particular provision is unenforceable."  *Curry v. MidAmerica Care Found.*, No. TH 02-0053-C T/H, 2002 WL 1821808, at *7 & n.2 (S.D. Ind. June 4, 2002).  Finish line invites the Court to sever any clause it finds unenforceable and enforce the rest of the agreement.  The Court severs the last sentence of Paragraph 6(A) to the extent it makes any future request by Baumann to arbitrate untimely.  Dkt. No. 6-3, ¶ 6(A).  If Baumann would have requested arbitration on October 14, 2008, instead of filing her Complaint with the Court, both parties agree that her request would have been timely.  It would be unfair to punish Baumann for her challenge of the Arbitration Agreements, and she should still be able to arbitrate her claims.

## IV.  **CONCLUSION**

For the foregoing reasons, defendant's, the Finish Line, Inc., Motion for Summary

Judgment is **GRANTED**.   Because all of the issues raised by the Complaint must be

submitted to arbitration in accordance with the Arbitration Agreements, the Complaint is

**DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED this 26th day of August, 2009.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:


Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@fed-law.com

Hannesson Ignatius Murphy
BARNES & THORNBURG LLP
hmurphy@btlaw.com

Kenneth J. Yerkes
BARNES & THORNBURG LLP
ken.yerkes@btlaw.com